**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jimmy Lee NIXON, Richard Nixon, Michael Parks, Emmitt Lamar Manns, Henry L. Manns, Michael Keeley, Gerald Wells, Defendants–Appellants.**

**No. 88–4001.**

United States Court of Appeals, Eleventh Circuit.

Dec. 7, 1990.

Linsey Moore, Jacksonville, Fla., for J.L. Nixon.

J. James Allen, Jacksonville, Fla., for R. Nixon.

Gerald S. Bettman, Jacksonville, Fla., for M. Parks.

Raymond E. Makowski, Jacksonville, Fla., for E.L. Manns.

David J. Kiyonaga, Kiyonaga & Kiyonaga, Alexandria, Va., for H.L. Manns.

Charlie L. Adams, Jacksonville, Fla., for M. Keeley.

Robert Stone, Hollywood, Fla., for G. Wells.

Ronald T. Henry, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

. Before EDMONDSON and COX, Circuit Judges, and WISDOM *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This case involves appeals by seven defendants from their convictions and sentences on charges stemming from a drug trafficking conspiracy operating in Jacksonville, Florida, from December 1986 to March 1988. The seven defendants, among twenty people originally charged in a 95–count indictment, were tried jointly and convicted for their various roles in the supply and distribution of crack cocaine.[1] Defendants jointly challenge their convictions on several grounds, claiming that the trial judge erred by not suppressing evidence obtained through government wiretaps and by allowing the jury to review transcripts of the wiretap evidence during deliberation. In addition, defendants raise a number of evidentiary and fair trial claims, as well as attack their individual convictions as un-

---

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. An eighth defendant, Stephanie Harden, was acquitted of one count of participating in a drug conspiracy, in violation of 21 U.S.C. § 846; one count of possessing with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); and one count of using a telephone to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b).

supported by the evidence. Furthermore, several defendants challenge the sentences imposed by the district court under the federal guidelines. After careful consideration of defendants' claims, we AFFIRM in part, VACATE in part, and REMAND for resentencing consistent with part II G of this opinion.

## I.

From December 1986 to March 1988, federal and local authorities conducted a major investigation of a crack cocaine distribution ring operating in Jacksonville, Florida, and in nearby Orange Park, Florida. The investigation culminated in the indictment of twenty people, including these seven defendants.

The indictment alleged that the two principals in the drug trafficking conspiracy were defendants Henry L. Manns and his brother, Emmitt Lamar Manns. Defendant Michael L. Keeley served as the "right hand man" in the general operation of the organization, and defendant Richard Nixon operated Manns' Confectionery, where the majority of the crack cocaine was distributed to street dealers. All four of these defendants were charged and convicted of, among other counts, conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and the more serious

charge of engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848.[2]

The grand jury further alleged that the Manns brothers' operation obtained some of its cocaine from defendant Gerald Wells. Defendant Michael Parks was hired to transport the cocaine powder to Jacksonville, where it was ultimately processed into cocaine base, or "crack." Defendant Jimmy Lee Nixon, father of defendant Richard Nixon, lived in Effingham County, Georgia, and was one of a number of "contractors" who purchased for resale various amounts of cocaine from the Manns brothers' organization. All three of these defendants were charged and convicted of participating in the drug trafficking conspiracy, in violation of 21 U.S.C. § 846, along with a number of other offenses.

## II.

### A. The Government Wiretap

Almost ten months after the government initiated its investigation of the alleged conspiracy—and three months after the creation of a task force to coordinate the investigation—law enforcement officials applied for an order authorizing a wiretap of the telephone located at the Orange Park residence of Michael Keeley and Rich-

---

**2.** Henry Manns also was charged and convicted of one count of attempting to distribute 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846; four counts of possessing with intent to manufacture cocaine base, in violation of 21 U.S.C. § 841(a)(1); five counts of manufacturing cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of distributing 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1); one count of possessing with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of possessing with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); and twenty-six counts of using a telephone to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b).

Emmitt Lamar Manns also was charged and convicted of one count of possessing cocaine with intent to manufacture cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of manufacturing cocaine base, in violation of 21 U.S.C. § 841(a)(1); and four counts of using a telephone to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b).

Michael Keeley also was charged and convicted of one count of distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of attempting to distribute 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846; four counts of possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); six counts of possessing with intent to manufacture cocaine base, in violation of 21 U.S.C. § 841(a)(1); and thirty-one counts of using a telephone to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b).

Richard Nixon also was charged and convicted of four counts of distributing in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); one count of possessing cocaine with intent to manufacture cocaine base, in violation of 21 U.S.C. § 841(a)(1); two counts of manufacturing in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); two counts of possessing with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); and eighteen counts of using a telephone to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b).

ard Nixon. The application was supported by the 108–page affidavit of police detective Charles L. Porter. The application for a wiretap was granted and then extended for another 30 days. A wiretap also was approved for the telephone located at Manns' Confectionery.

The wiretap and extension authorizations were challenged by defendants before trial in motions to suppress. Defendants alleged that the wiretaps were unsupported by probable cause, arguing that the warrant depended upon unsubstantiated factual claims and informants of questionable reliability and that insufficient evidence pointed to the particular phone line to be tapped. The wiretaps and extension were challenged further as unnecessary to the government's investigation and prosecution of the alleged drug conspiracy. The magistrate held several hearings on the sufficiency of the warrants and recommended that the motions to suppress be denied. The district court, after de novo review, adopted the report and recommendations of the magistrate.

■ An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant. See United States v. Hyde, 574 F.2d 856, 862 (5th Cir.1978).[3] The issuing magistrate is to make a "practical, common-sense decision" about whether the "totality of the circumstances" indicate that there is probable cause that the sought-for evidence will be obtained. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The standard for our review of the magistrate's determination is "simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." Id. at 238–39, 103 S.Ct. at 2332 (citation omitted). We have also said that the practical nature of the magistrate's decision justifies "great deference" upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases. See United States v. Lockett, 674 F.2d 843, 845 (11th Cir.1982).

■ After review of the record, we cannot conclude that the magistrate lacked a substantial basis for finding probable cause. When the magistrate made the probable cause judgment, he had been told a lot: Keeley and Henry Manns had agreed to sell narcotics to undercover agents, though the transaction never took place; Keeley and Henry Manns were stopped at the Jacksonville airport carrying $73,600 in cash and using airline tickets to Ft. Lauderdale bought under fictitious names; Keeley and Henry Manns were stopped for reckless driving, and officers found $6,000 in cash and a large amount of gold jewelry in the rented car; a search warrant executed on Manns' Confectionery uncovered 34 grams of crack cocaine, semi-automatic weapons, and ammunition; a confidential informant purchased cocaine from Jimmy Lee Nixon at Nixon's mobile home, and a search of the mobile home yielded 41 grams of crack cocaine; responding to reports of gunshots, police found Henry Manns, Emmitt Manns, and Richard Nixon at the home of Manns' parents, with Henry Manns wearing a flack jacket containing 50 rounds of live ammunition, surrounded by numerous firearms, ammunition, and a live pipebomb; on two separate occasions, a confidential informant called Keeley and Richard Nixon at their home, arranging to purchase crack cocaine, and then met defendants at Manns' Confectionery and made the purchases; pen register activity indicated phone calls to and from the house with known drug dealers and to cellular phones, a known tool of the drug trade; surveillance and investigative reports from those watching the home suggested substantial narcotics-related activity; and there was a highly suspicious quantity and quality of known real and personal property controlled by members of the organization.

■ Furthermore, evidence from the initial month of the wiretap on the Orange

---

**3.** In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

Park phone line generated more than sufficient evidence to justify both the extension and the second wiretap of the Confectionery. Defendants conceded in oral argument that at the time of the first wiretap authorization there was probable cause as to the existence of a drug operation at the Confectionery. They relied instead on a claim that there was insufficient evidence for probable cause that the phone at the Orange Park home belonging to Keeley and Richard Nixon was being used in the conspiracy. The evidence in the affidavit clearly indicated, however, that the phone at the residence of Keeley and Richard Nixon was used to direct customers to the Confectionery for drug sales.

■ Defendants additionally challenge the wiretaps as unnecessary to the government's investigation and prosecution of the conspiracy. The statute authorizing government wiretaps requires that an application for electronic interception must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This provision does not require, however, that the application provide a "comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir.1986).

Defendants assert that the government had already obtained through less intrusive investigative techniques sufficient evidence to prosecute and convict those involved in the drug conspiracy. What amount of evidence will be sufficient to obtain a conviction is an imprecise concept. But upon a review of the record we cannot say that the magistrate erred in concluding that alternative investigative techniques neither had

succeeded, nor would succeed, in providing enough evidence to prove the conspirators' guilt beyond a reasonable doubt.

As all wiretap and extension authorizations were supported by probable cause and substantial investigative need, we affirm the district court's denial of defendants' motion to suppress the wiretap evidence.

### B. The Wiretap Transcripts

Defendants also challenge the decision by the trial judge to allow transcripts of phone calls obtained through the wiretap to be reviewed by the jury during deliberation. Defendants' objections to the transcripts go not to conversation content, which is uncontested, but to the identification on the transcripts of individual speakers.

■ Defendants say that identifying speakers on a transcript improperly encroaches on the jury's responsibility to determine for itself the speakers' identities and that allowing the transcripts into the jury room further aggravates this encroachment. We have recognized, however, that transcripts are evidence admissible to assist the jury in identifying speakers, *see United States v. Onori*, 535 F.2d 938, 947 (5th Cir.1976), and, that absent anything more than a generalized claim of prejudice, we will not find error in the transcripts being allowed in the jury room, *see United States v. Costa*, 691 F.2d 1358, 1363 (11th Cir.1982).

The record indicates that the district court exercised proper care in handling the transcripts throughout the trial. On several occasions during the trial, the district court issued limiting instructions to the jury about use of the transcripts, each time stressing that the jury must decide on its own about the accuracy of speaker identifications.[4] Each time the jury used a tran-

---

**4.** The trial judge followed closely the Pattern Jury Instruction for the Eleventh Circuit on use of transcripts:

THE COURT: ... Members of the jury, the transcripts have been identified as a typewritten transcript of the oral conversation which

can be heard on the tape recordings received in evidence as Exhibits 1 through 4. *The transcript also purports to identify the speakers engaged in the conversation.* I have admitted the transcript for the limited and secondary purpose of aiding you in following the con-

script as an aid during the trial, the government identified the speakers through live witnesses, often case agents or coconspirators who personally recognized defendants' voices. Defense counsel therefore had ample opportunity at trial to challenge the identity of speakers on cross examination. On many occasions, the speakers who were recorded identify themselves during the phone conversations through use of names or nicknames. One defense counsel conceded in oral argument that the accuracy of speaker identifications was in fact not really at issue, but instead it was claimed that the jury might have accorded undue weight to particular conversations. We also note that defendants were granted access to the transcripts before trial and were offered the opportunity to present alternative transcripts. They chose not to do so.

■ The defense argues on appeal that the trial judge had given the impression that the jury would have access to the transcripts only during the playing of individual tapes and that defense strategy was unduly prejudiced by the "surprise" the defense attorneys faced when the judge announced that the jury could review the transcripts during deliberation. But the only language of the trial judge relied upon by the defense attorneys in their claim to being misled is that of the Eleventh Circuit's Pattern Jury Instruction itself. We cannot accept the claim that, given the settled question of jury access to transcripts during deliberations, the defense attorneys justifiably relied upon that instruc-

tion to reach their conclusion that the transcripts would not go to the jury room.[5]

### C. Other Evidentiary Issues

Defendant Henry Manns objects to the admission into evidence of cocaine seized from his automobile pursuant to a warrantless search. The police had obtained wiretap information indicating that Manns would be driving from Ft. Lauderdale to Jacksonville the next week in a rented car with a package containing cocaine. On the day of the scheduled trip, another intercepted phone call identified the estimated times that Manns would be leaving Ft. Lauderdale and arriving in Jacksonville. Knowing further that his expected route was Interstate 95, a number of agents were lying in wait alongside the highway. Manns was spotted in a rented car travelling 81 m.p.h. and was stopped by police. A search of the trunk led to the seizure of two kilograms of powder cocaine.

The district court's denial of defendant's motion to suppress is a mixed question of law and fact: appellant must show findings of fact to be clearly erroneous, *see United States v. Newbern*, 731 F.2d 744, 747 (11th Cir.1984), while the application of the law to those facts is subject to de novo review. *See Adams v. Balkcom*, 688 F.2d 734, 739 (11th Cir.1982). In addition, this court will construe the facts in the light most favorable to the government as prevailing party below. *See United States v. Baron–Mantilla*, 743 F.2d 868, 870 (11th Cir.1984).

■ Manns concedes that law enforcement agents had probable cause to stop and to search his vehicle for narcotics con-

tent of the conversation as you listen to the tape recording and *also to aid you in identifying the speakers.*

However, you are specifically instructed that *whether the transcript correctly or incorrectly reflects* the content of the conversation or *the identity of the speakers is entirely for you to determine,* based upon your own evaluation of the testimony you have heard concerning the preparation of the transcript and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents, and if you should determine that the transcript is any respect incorrect or unreliable, you should disregard it to that extent.

R–36–147–48 (emphasis added); *see also id.* at 40–109–10.

5. Indeed, one exchange between a defense attorney and the trial judge indicated the exact status of the transcripts:

[GOVERNMENT]: Your Honor, at this time I would request that these transcripts be distributed to the jury.
[ONE DEFENSE COUNSEL]: Your Honor, are the transcripts being admitted into evidence or are they just being used as an aid to the listening of the voices?
THE COURT: They're admitted into evidence. R–41–97.

traband but offers a three-part argument against the legality of the search and seizure. First, Manns claims that the circumstances facing the federal agents *before* they stopped Manns' car were insufficiently exigent to justify a warrantless search. Second, Manns argues that any exigency existing *after* the car was stopped was manufactured by the agents themselves, when they alerted Manns to their presence. Third, Manns claims that the agents had obtained more than enough information from the wiretap about his planned route to have obtained an "anticipatory" search warrant before they stopped him en route from Ft. Lauderdale to Jacksonville.

Defendant's arguments are flawed at their inception. For Manns to succeed in excluding the cocaine, we would have to conclude that law enforcement agents can justify the warrantless search of an automobile only through some showing of exigent circumstances *beyond* the exigency inherent in the ready mobility of the vehicle. In the light of Supreme Court precedent, we have recognized that "the ability of a vehicle to become mobile is sufficient to satisfy the exigency requirement." *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir.1988); *see also California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Put differently, the mobility of an automobile is exigency enough. As these cases indicate, the automobile exception to the warrant requirement—like all or almost all other exceptions for warrantless searches—continues to be stated in terms of a showing of both probable cause *and* exigent circumstances. At the same time, these opinions make clear that the requirement of exigent circumstances is satisfied by the "ready mobility" *inherent* in all automobiles that reasonably appear to be capable of functioning.

■ Defendant Manns concedes the existence of probable cause to stop and to search his rented car, and the inherent mobility of the vehicle supplies sufficient exigency to justify employing the automobile exception.[6] We therefore affirm the district court's denial of defendant's motion to suppress.

■ Henry Manns further objects to the admission of several photographs of Manns "draped with garish jewelry and [with] his arms wrapped around bundles of cash." Brief for Appellant Henry Manns at 49. Manns argues that what little probative value the photographs served was outweighed by unfair prejudice, effectively "bellow[ing] at the jury—here is a flashy drug dealer." *Id.* The district court accepted the government's argument that the evidence was relevant to demonstrating the "substantial income or resources" element of the CCE count.[7] We conclude that admission of this evidence as probative on the CCE count was not an abuse of discretion resulting in substantial prejudice to the defendant. *See United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983) (outlining standard of review). We reach the

---

**6.** About the possibility of obtaining an anticipatory search warrant, we note that such warrants are appropriate only where the contraband is on a "sure course" to a known destination, such as through the mail. *See United States v. Hale*, 784 F.2d 1465 (9th Cir.1986). Until Manns' vehicle actually appeared at the predicted place, there was nothing sure about his course or that there would be such a trip. In addition, the police were unsure about exactly what rented car Manns would be driving until he was spotted on the interstate. We know of no precedent, furthermore, that *requires* law enforcement officials to try to obtain an anticipatory warrant if they may possibly be able to justify one. *See United States v. Panitz*, 907 F.2d 1267, 1270–71 n. 3 (1st Cir.1990).

**7.** Under 21 U.S.C. § 848(c), a person is engaged in a continuing criminal enterprise if:

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter-

. . . .

(B) *from which such person obtains substantial income or resources.*

28 U.S.C.A. § 848(c) (Supp.1990) (emphasis added).

same conclusion on the other evidence Manns found objectionable.[8]

Defendants Michael Parks and Richard Nixon object to the admission into evidence of a machine gun, a shotgun, and a pipebomb, as well as testimony relating to their seizure at the residence of Nixon and Michael Keeley. Defendants argue that, as evidence of a prior bad act, the weapons were inadmissible under Rule 404(b) of the Federal Rules of Evidence.

■■■■■ Rule 404(b) explicitly allows for admission of such evidence, however, when relevant for purposes other than demonstrating poor character or propensity; that is, to prove elements such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Such weapons are often " 'tools of the trade' for drug dealers, ... [and] therefore had circumstantial relevance to [the defendants'] intent on the drug conspiracy count...." *United States v. Rodriguez*, 765 F.2d 1546, 1562 (11th Cir.1985). The trial judge did not abuse her broad discretion in deciding that the evidence had relevance independent of character and propensity and that its probative value outweighed any unfair prejudice to defendants. *See id.* We reject as meritless Richard Nixon's argument that the admission of the evidence violated his Fifth and Sixth Amendment rights as evidence of collateral crimes not charged in the indictment. We accept instead the district court's conclusion that the evidence had independent relevance as to the existence of the drug conspiracy.

■■■ We also reject as meritless the objection by defendant Jimmy Lee Nixon to the limited admission of a map of southern Georgia and northern Florida. Nixon argues that the map was unduly prejudicial to his defense by creating a suspicious connection between the county of his residence and Jacksonville, Florida. The district court admitted the map for the limited purpose of assisting a police officer in identifying the location of Savannah and Springfield, Georgia. This did not amount to an abuse of the judge's broad discretion.

■■■ Jimmy Lee Nixon further objects to the admission of cocaine base seized from his mobile home pursuant to a search warrant. Nixon claims that, because the warrant and its supporting affidavit were signed at the same date and time, the magistrate could not have properly based his decision on a fair and adequate consideration of the evidence contained in the affidavit. This argument amounts to no more than unsubstantiated speculation and, standing alone, fails to meet even defendant's initial burden of persuading the court that the evidence should be suppressed. *See United States v. Evans*, 572 F.2d 455, 486 (5th Cir.1978).

### D. Motions for Mistrial

Defendant Henry Manns appeals the district court's denial of his motion for mistrial, made after a police detective used the term "conspiracy" during testimony at trial. Manns contends that, although the witness testified as an expert about drug dealing activities, his use of the term "conspiracy" amounted to a conclusion as to the ultimate issue, usurping the jury's proper role. Rule 704 of the Federal Rules of Evidence provides that an expert's "testimony in the form of an opinion or inference otherwise admissable is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704.

■■■ The police detective's use of the term "conspiracy" on several occasions—always in response to questions during cross-examination by the defense—was not objected to or otherwise challenged at the time. As a result, the judge's decision not to grant the motion for mistrial is subject to our deferential, "plain error" standard

---

**8.** Manns also objected to the following evidence: (1) testimony regarding the seizure of $73,500 at the Jacksonville airport in January 1987; (2) police testimony about an automobile stop in February 1987, where Manns was a passenger and large amounts of cash and jewelry were observed; (3) evidence of a Ferrari automobile linked to Manns; (4) other weapons and jewelry seized by the police during the course of the investigation.

of review. *See United States v. Nabors,* 707 F.2d 1294, 1298 (11th Cir.1983).

 Considered in context, the police detective's use of the term "conspiracy" was a factual—not a legal—conclusion and did not track unduly the definition of the offense in 21 U.S.C. § 846. As a result, *United States v. Scop,* 846 F.2d 135 (2d Cir.1988), relied upon by defendant, is distinguishable. In the light of Rule 704 and the factual nature of the witness' conclusion, the district judge's denial of the motion for mistrial was not plain error.

 Defendant Jimmy Lee Nixon argues that his trial was rendered fundamentally unfair by remarks made during the prosecutor's closing argument. Nixon specifically objects to the following sentences uttered by the prosecutor: "Jimmy Lee Nixon is one of Henry Manns' customers. He has his own operation in Georgia, but he is supplied by Henry Manns." The prosecutor's statements were well within the government's discretion to urge a reasonable conclusion based on admitted evidence; we conclude that defendant's claim is meritless. *See United States v. Braithwaite,* 709 F.2d 1450, 1456 (11th Cir.1983).

Defendant Gerald Wells objects to what he contends was a failure by the government to correct what it knew to be false testimony by a government witness. During trial, a government witness named Terence Ewell testified about Wells' involvement in the Manns brothers' drug operation. On direct examination, Ewell denied that he was testifying pursuant to any agreement with the government, but offered this as his motivation: "So I don't get no more time." On cross-examination, Ewell admitted that he had entered earlier into an agreement with the United States Attorney's office in the Southern District of Florida but insisted that his current testimony was no part of that agreement. Cross-examination further revealed that Ewell had pending a Rule 35 motion for sentence mitigation on that earlier charge, but the witness again said that it was unrelated to his testimony against Wells. Wells maintains that the government's failure to correct the testimony on direct examination—exactly what form such a correction would take is unclear from defendant's brief—violated his due process rights by allowing the jury to work under the mistaken impression that the witness was not influenced in his testimony by a desire to receive favorable treatment by the government. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

 Defendant Wells did not object at trial to Ewell's testimony about the plea agreement and never objected to the government's failure to provide evidence favorable to the defendant or to correct false testimony. In addition, Wells never moved for a mistrial or new trial on this basis at anytime during the proceedings. As a result, defendant's conviction will be affirmed unless we find "plain error." *See United States v. Sorondo,* 845 F.2d 945 (11th Cir.1988). We find no such error.

The Supreme Court held in *Giglio* that it was reversible error for the government, "although not soliciting false evidence, [to] allow[ ] it to go uncorrected when it appears." *See Giglio,* 405 U.S. at 153, 92 S.Ct. at 766. The Court made clear, however, that a new trial is required only if "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury." *Id.* (citation omitted).

We cannot accept (and defendant offers no evidence to support) the conclusion that the witness' testimony—including both direct and cross-examination—inaccurately described as a factual matter the witness' former and present agreements to cooperate with the government. The district judge explicitly indicated on several occasions that the defense could recall the witness and explore the issue upon the discovery of additional evidence. The defense counsel chose not do so. As a result of defendant's failure to prove as an initial matter that the testimony was false, we cannot conclude that the jury was misled by the testimony and cross-examination—much less that any such mistaken impression materially affected the verdict.

## E. Motion for Severance

Defendant Wells appeals the district court's denial of his motion for severance. Wells was charged with four counts in the indictment, including a conspiracy count, and was portrayed by the government as one of several suppliers of cocaine from south Florida to the Manns brothers' operation in Jacksonville. Wells argues that an individualized determination of his guilt or innocence was unfairly obscured by the slow accumulation of evidence against his codefendants and by the admission of the machine gun, shotgun, and pipebomb seized from a codefendant's residence.

■■■ The decision whether to grant or deny a motion to sever is committed to the discretion of the trial judge and will be overturned only upon a showing of "compelling prejudice." *United States v. Capo,* 693 F.2d 1330 (11th Cir.1982). As we have written,

> 'Compelling prejudice' means that the jury will not be able to 'collate and appraise the independent evidence against each defendant....' Though the task be difficult, unless the jury is unable to perform it, severance should not be granted. Coconspirators should be tried jointly in the interests of judicial economy, and severance is not warranted even if a defendant participated in only a single aspect of the conspiracy.

*United States v. Sans,* 731 F.2d 1521, 1533 (11th Cir.1984) (citations omitted). Furthermore, evidence against one defendant in a conspiracy can be properly considered against another—given evidence linking each to the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

■■ The trial judge was within her discretion in concluding that the jury would be able to appraise the evidence against each defendant individually. We conclude that the jury was successful in doing so, considering its decision to acquit one of Wells' codefendants of all four counts charged against her. *See supra* note 1.

## F. Motions for Judgment of Acquittal

■■ Defendants, except Wells, assert various claims alleging insufficient evidence to support their respective convictions. On appeal, this court must sustain the convictions "if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *United States v. Malatesta,* 590 F.2d 1379, 1382 (5th Cir.1979). In addition, this court must draw all reasonable inferences in the government's favor and keep in mind that "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt." *United States v. Pierre,* 688 F.2d 724, 725 (11th Cir.1982). We have considered the evidence in the record supporting the conviction of each defendant on each challenged count, and we conclude that the evidence easily satisfies this deferential test.

## G. Sentences

### 1. Defendant Michael Parks

■■ Defendant Parks argues that he should not have been sentenced pursuant to the guidelines for his conviction for conspiracy in violation of 21 U.S.C. § 846. Parks argues that he engaged in no criminal activity after the effective date of the guidelines, November 1, 1987, and that application of the guidelines to his offense therefore would be an ex post facto violation.

We have held previously that "the ex post facto clause does not bar application of the guidelines to conspiracies that began before and continued after November 1, 1987." *United States v. Pippin,* 903 F.2d 1478, 1481 (11th Cir.1990). Parks was convicted of involvement in a conspiracy that began in December 1986 and continued until March 1988, after the guidelines became effective.

A conspirator may be able to escape sentencing under the guidelines, however, if he "can meet his burden of proving withdrawal from the conspiracy before November 1, 1987." *Id.; see also United States v. Terzado–Madruga,* 897 F.2d 1099, 1123 (11th Cir.), *reh'g denied,* No. 89–8063 (May

11, 1990). Given the placement of burden, however, the government need not prove that the defendant committed any act in furtherance of the conspiracy after November 1, or even that the defendant knew that coconspirators had acted after the deadline. "Even if the[ ] defendant[ ] did not participate in the conspiracy after the effective date of the guidelines, the size of the drug distribution conspiracy in this case made it foreseeable that the conspiracy would continue after the effective date." *United States v. Walton,* 908 F.2d 1289, 1300 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) (citing *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946) (holding that conspirators are liable for any foreseeable actions by coconspirators in furtherance of the conspiracy)).

Noting that "[m]erely ending one's activity in a conspiracy may not constitute withdrawal," we held in *Pippin* that withdrawal must be demonstrated by evidence that the defendant:

(1) 'undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives,' and

(2) 'either communicated those acts in a manner reasonably calculated to reach his coconspirators or disclosed the illegal scheme to law enforcement authorities.'

*Id.* (quoting *United States v. Finestone,* 816 F.2d 583, 589 (11th Cir.1987)).

The evidence in this case effectively prevents Parks from meeting either of these requirements. Parks alleges that he refused before November 1, 1987, to make any further drug courier trips for the Manns brothers, thereby ending any criminal activity. As noted earlier, however, mere cessation of criminal activity does not constitute withdrawal. Moreover, testimony at trial indicated that on two different occasions after November 1, Parks demanded in wiretapped phone conversations that he receive money for prior drug courier trips to south Florida. Park's assertion

that he refused before November 1 to "mule" drugs for the conspiracy is irrelevant if he continued to demand that he be paid for his prior illegal activity.

Given the burden on the defendant to prove affirmative withdrawal before November 1, we conclude that the trial judge was justified in finding that the defendant was a party to the conspiracy, which continued after November 1, 1987. As a result, we affirm Parks' sentence under the guidelines.

2. Defendants Henry Manns, Emmitt Manns, Michael Keeley, and Richard Nixon

█ Four defendants (Henry and Emmitt Manns, Michael Keeley, and Richard Nixon) were convicted of engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848, in addition to section 846 conspiracy counts, section 841 possession and trafficking counts, and section 843 telephone counts. *See supra* note 2 (listing counts). Defendants argue on appeal that the trial judge improperly enhanced their sentences for their roles in the offense,[9] an action they contend is prohibited by section 2D1.5 of the guidelines, which does not allow "role in the offense" enhancement for CCE convictions. Because we decide below that defendant's conspiracy convictions must be vacated, we agree that the sentence enhancements were improper. We therefore vacate defendants' convictions and sentences for the section 846 conspiracy counts and vacate their sentences for the section 848 CCE counts, remanding for resentencing in conformity with this opinion.

This court has long held that a section 846 conspiracy count is a lesser-included offense of the more serious charge of section 848 CCE. *See United States v. Cruz,* 805 F.2d 1464, 1479 (11th Cir.1986); *United States v. Graziano,* 710 F.2d 691, 699 (11th Cir.1983); *see also Jeffers v. United States,* 432 U.S. 137, 149–50, 97 S.Ct. 2207, 2215–16, 53 L.Ed.2d 168 (1977).

---

**9.** The trial judge added four levels for Henry and Emmitt Manns, yielding adjusted offense levels of 44 and 42, respectively. Three levels

were added for Keeley and Richard Nixon, yielding adjusted offense levels of 39.

Though the Supreme Court has held that double jeopardy does not bar prosecution for both offenses, *see Garrett v. United States*, 471 U.S. 773, 786, 105 S.Ct. 2407, 2415, 85 L.Ed.2d 764 (1985), the Court has suggested that Congress did not intend for a defendant to be punished for both offenses. *See Jeffers*, 432 U.S. at 157, 97 S.Ct. at 2220.

As a result, when a defendant is convicted and sentenced under a section 846 conspiracy count and a section 848 CCE count, the rule in this circuit has been to merge the two offenses by vacating the sentence *and* conviction of the lesser-included section 846 conspiracy.[10] *See United States v. Bissell*, 866 F.2d 1343, 1348 (11th Cir.), *reh'g denied*, 874 F.2d 821, *cert. denied*, —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989) ("[S]ince we affirm the CCE convictions of [the defendants], we must vacate their convictions and sentences under the conspiracy counts because they merge, as a matter of law, with the CCE convictions."); *United States v. Brantley*, 733 F.2d 1429, 1436 n. 15 (11th Cir.1984) ("The law in this circuit is clear that both the sentences and convictions must be vacated [when a defendant is convicted for a § 846 conspiracy count and a § 848 CCE count]."); *Cruz*, 805 F.2d at 1479; *United States v. Michel*, 588 F.2d 986, 1001 (5th Cir.1979); *United States v. Buckley*, 586 F.2d 498, 505 (5th Cir.1978); *United States v. Newman*, 468 F.2d 791, 796 (5th Cir. 1972). The appropriateness of this approach is especially indicated here, where the trial judge's reliance in sentencing on the lesser conspiracy count allowed a three to four level increase that is prohibited for the greater CCE count.

Chapter Three, Part D of the Sentencing Guidelines governs the grouping of counts for sentencing purposes. Section 3D1.2(d) indicates that "[c]ounts are grouped together if the offense level is determined largely on the basis of ... the quantity of a substance involved, ... or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2(d). This section specifically names the charge of engaging in a section 848 CCE, governed in the guidelines by section 2D1.5, as an offense to be included in this type of grouping.[11]

---

**10.** The section 841 possession and trafficking counts, and the section 843 telephone counts are also predicate, lesser-included offenses to the section 848 CCE count. The rule in this circuit, however, has been to *allow* separate convictions and sentences on these counts to stand. *See United States v. Brantley*, 733 F.2d 1429, 1436–37 (11th Cir.1984) (after vacating conviction and sentence under § 846, court affirmed conviction and sentence under § 841 counts). According to *Brantley*, the argument that convictions and sentences on section 841 counts, as lesser-included offenses of the section 848 CCE count, should be vacated, was contrary to two court precedents: *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981) (Unit B); *United States v. Garrett*, 727 F.2d 1003 (11th Cir.1984). The *Brantley* court reasoned that because these two precedents held that in a subsequent section 848 prosecution, double jeopardy does not prevent reliance upon a prior section 841 conviction as a predicate offense, then "it follows logically that double jeopardy does not bar cumulative punishment in a single prosecution for § 841 predicate offenses and the § 848 offense." *Brantley*, 733 F.2d at 1437.

**11.** Section 3D1.2 was amended effective June 15, 1988, after the commission of the offense (the CCE lasted until defendants were arrested in March 1988) but before the date of sentencing (November 17, 1988). Section 3553(a)(4) and (a)(5) of the Sentencing Reform Act requires a sentencing court to apply the Commission's guidelines and policy statements "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4). *See United States v. Gonzalez–Lopez*, 911 F.2d 542, 546 (11th Cir.1990). We need not address which version should govern, however. The amendment to section 3D1.2 made no changes relevant to our analysis because section 2D1.5 is included in both versions.

The version of section 3D1.2(d) at the time of sentencing held in relevant part as follows:
> Offenses covered by the following guidelines are specifically included under this subsection: ... § 2D1.5....

The version of section 3D1.2(d) at the time of the offense held in relevant part as follows:
> When counts involve the same general type of offense and the guidelines for that type of offense determine the offense level primarily on the basis of ... the quantity of substance involved, or some other measure of aggregate harm. Offenses of this kind are found in Chapter Two, ... Part D (except §§ 2D1.6– 2D3.4)....

U.S.S.G. App. C (text deleted by amendment 45).

Section 3D1.3 then governs determination of the appropriate offense level, directing the court to the Drug Quantity Table included in section 2D1.1. We accept the trial court's finding that the CCE and predicate offenses committed by these defendants involved more than 500 grams of cocaine base, yielding an offense level of 36.[12]

The guidelines are explicit, however, in prohibiting enhancement of offense levels for a defendant's role in a continuing criminal enterprise. *See* U.S.S.G. § 2D1.5. The guidelines explain why:

> Because a conviction under 21 U.S.C. § 848 establishes that a defendant controlled and exercised authority over one of the most serious types of ongoing criminal activity, this guideline provides a base offense level of 36. An adjustment from Chapter Three, Part B is not authorized because the offense level of this guideline already reflects an adjustment for role in the offense.

U.S.S.G. App. C (amendment 66) (all versions of § 2D1.5 carry the same background note). Because the CCE count was the proper base for guideline application in this case, defendants' offense levels should not have been adjusted for their roles in the offense.[13]

AFFIRMED in Part, VACATED in Part, and REMANDED.

---

**12.** We reject as meritless objections by several defendants to the trial judge's findings and application with regard to the Drug Quantity Table. We also reject objections to an adjustment for use of weapons in the CCE (applied to the Manns brothers only) and to an adjustment for obstruction of justice (applied to Henry Manns).

**13.** It should be noted that section 2D1.5 has been amended yet again, in November 1989, and the newest version should prevent many of the guideline application problems encountered in this case. *See* U.S.S.G. App. C (amendment 139). Most important, the new guideline eliminates the confusion created by previous versions that purported to offer a base offense level for CCE counts while at the same time directing the sentencing court to the Drug Quantity Table to determine the offense level. The new version provides as follows:

> (a) Base Offense Level (Apply the greater):
> (1) 4 plus the offense level from [the Drug Quantity Table] applicable to the underlying offense; or
> (2) 38.

U.S.S.G. § 2D1.5.