**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Daryl FORKER, Richard Frawley,
Defendants–Appellees.**

**Danny Lee Hinman, Defendant.**

**No. 90–8347.**

United States Court of Appeals,
Eleventh Circuit.

April 9, 1991.

F. Gentry Shelnutt, Amy D. Levin, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellant.

Steven H. Sadow, Atlanta, Ga., for Frawley.

C. Michael Abbott, Atlanta, Ga., for Forker.

Before HATCHETT and DUBINA, Circuit Judges, and HILL, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant, the United States of America, appeals the district court's order suppress-ing evidence in the appellees' criminal pro-ceeding. Appellee, Richard Frawley ("Frawley"), filed a motion to suppress evidence of an excess of $150,000 in cash found in his Cadillac automobile, and evidence of a key to the Cadillac found at the time of his warrantless arrest. Appellee, Daryl Forker ("Forker"), sought to suppress evidence of the cash found in the Cadillac he had been driving. The matter was referred by the district court to a United States magistrate judge. The magistrate judge conducted an evidentiary hearing and entered a report and recommendation recommending that the appellees' motions to suppress be denied. The district court rejected the magistrate judge's recommendation and granted the appellees' motions to suppress. Upon a review of the record, we find that the district court erred in granting the motions to suppress.

## I. BACKGROUND

In August 1988, undercover Drug Enforcement Administration (DEA) agents attempted to negotiate a sale of 1,000 pounds of marijuana with Todd Chapman and Mark Fustine. During these negotiations, agents observed Chapman and Fustine meeting with Hinman, Hrenko,[1] and Forker, and from these negotiations learned that the money for the purchase of the marijuana was to come from Chicago, Illinois. The agents were unable to coordinate the details of the transaction so the deal never materialized. Ultimately, Chapman and Fustine were arrested for their participation in the conspiracy and they agreed to cooperate with the DEA. During a debriefing by Agent Barton, Chapman and Fustine discussed their involvement in three or four prior marijuana transactions with Hrenko, Forker, Hinman, and other unknown persons from Chicago. Agent Barton and Fustine, now working together, contacted Hrenko to negotiate another marijuana sale.

---

1. Danny Hinman and Peter Hrenko were also indicted. The district court included Danny Hinman in the case style used in the order suppressing the evidence; accordingly, his name was included on the style of the case in the notice of appeal. In reality, Hinman was not subject to the suppression order.

After Agent Barton and Fustine's telephone conversations with Hrenko, they decided that the marijuana would be viewed in Atlanta, Georgia. On March 3, 1989, Hrenko met with Agent Barton and viewed approximately 500 pounds of marijuana. At the time, Hrenko stated he was interested in purchasing approximately 630 pounds of marijuana from Agent Barton. During the negotiations, Hrenko told Agent Barton that the money would be in a box and would be shown to Fustine. Thereafter, Fustine, Forker and Hrenko met at the Embassy Suites Hotel and agreed that Forker would have to go elsewhere to pick up the money. After this discussion, which was monitored by a wire worn by Fustine, surveillance agents observed Forker leaving the Embassy Suites and driving a rental car to the Holiday Inn on Powers Ferry Road and Interstate 285. He was seen entering the Holiday Inn and then leaving a short time later. This time, however, he entered Frawley's Cadillac, which was parked at the Holiday Inn and which was the same car, with the same tag, that had been present during the aborted purchase of marijuana in August of 1988.

Forker initially drove Frawley's Cadillac away from the Holiday Inn toward the area of the Embassy Suites Hotel, but he then began driving erratically and ultimately returned to the Holiday Inn. Upon reaching the Holiday Inn, Forker got out of the Cadillac whereupon he was arrested by DEA agents fifteen yards from the car. Although the arrest occurred almost immediately after Forker's exit from the Cadillac, the keys to the Cadillac were not found on his person, but were located underneath a nearby vehicle. After the keys were found, the agents searched the car and the trunk. In the trunk, the agents discovered a cardboard box containing a large amount of cash.

While the search of the Cadillac was taking place, agents observed Frawley in the window of his motel room and discovered, through the motel registration, the exact room Frawley occupied. Within a short time after Forker's arrest, DEA agents also arrested Frawley and discovered a second set of keys to the Cadillac in his pocket.

A federal grand jury returned a three-count indictment against Forker and Frawley, charging them with conspiracy to possess in excess of 100 kilograms of marijuana, with attempting to possess in excess of 100 kilograms of marijuana in August 1988 and with attempting to possess in excess of 100 kilograms of marijuana from January 10 to March 3, 1989.

## II. DISCUSSION

■ Rulings on motions to suppress evidence involve mixed questions of law and fact. *See United States v. Garcia*, 890 F.2d 355 (11th Cir.1989). While we must defer to the district court's findings of fact unless clearly erroneous, we are to review the district court's application of law to the facts *de novo*. *United States v. Campbell*, 920 F.2d 793 (11th Cir.1991).

### A. *Vehicle Search*

■ An officer can conduct a warrantless search or seizure of a vehicle if there exists probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under the law and there exist exigent circumstances which necessitate a search or seizure. *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir.1988). Probable cause to search exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." *Id.*, quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). Exigent circumstances arise when the inevitable delay incident to obtaining a warrant must give way to a need for immediate action. *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir. 1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). If there is a possibility that the contraband will be destroyed or removed, then a warrantless search is justified due to these exigent circumstances. The officers or agents must determine if exigency exists at the time of the seizure of the automobile, not

at the time of the search of the vehicle. *United States v. Hall*, 716 F.2d 826, 829 (11th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 840 (1984).

In reviewing the totality of the circumstances, as required by *Clark*, the district court found that probable cause existed for the warrantless search of the vehicle, but found that no exigent circumstances existed. Accordingly, the district court determined that the search of the vehicle was violative of Forker and Frawley's fourth amendment rights and the evidence seized from the trunk of the car should be suppressed.

■ As this court held in *Alexander*, overwhelming exigency is not necessary. 835 F.2d at 1410. The ability of the vehicle to become mobile is sufficient to satisfy the exigency requirement. *Id.* at 1409. "Put differently, the mobility of an automobile is exigency enough." *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir.1990). "[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning." *Id.*

The facts in this case are supportive of a finding of exigency. The officers were not certain how many sets of keys to the Cadillac existed; they were not certain if the car would remain in the parking lot if they left to obtain a warrant. At the time Forker was stopped and arrested at the Holiday Inn parking lot, there were suspects in another hotel ten minutes away and Frawley, the suspected source of the cash as well as the known owner of the Cadillac driven by Forker, was inside the Holiday Inn. The agents had not apprehended all suspects and were not even aware of how many people were involved in the conspiracy. Further, the Cadillac was in the middle of a public parking lot, vulnerable to the efforts of cohorts of Forker's to seize the cash or destroy evidence. The agents were in the middle of a fast-moving series of events which prompted the search of the vehicle. The circumstances that prompted the search of the Cadillac were certainly exigent and as such, we find that the search of the vehicle was not violative of Forker and Frawley's fourth amendment rights.

### B. *Motel Arrest*

■ The district court found there was no probable cause to arrest Frawley in his motel room. Accordingly, the district court granted the motion to suppress the key found on Frawley's person. We disagree with the district court and find that both probable cause and exigent circumstances existed to arrest Frawley in the motel room.

Probable cause was evident due to the knowledge by the DEA agents of several facts about Frawley which would have provided a reasonably prudent person with probable cause to believe that Frawley was involved in criminal activity. These facts included: (1) Frawley had been present in August when Hrenko and Forker had attempted to purchase 1,000 pounds of marijuana; (2) Frawley's Cadillac was present at the August attempted drug transaction and was present again at the March transaction; (3) Frawley was from Chicago, and the money for the drugs was to come from Chicago; (4) When Forker obtained the money for the deal he went to Frawley's motel room; (5) As Forker left Frawley's motel room, he drove Frawley's Cadillac; (6) Frawley had been observed watching Forker drive the Cadillac out of the motel parking lot; (7) The arrest of Forker and seizure of Frawley's Cadillac occurred at the motel where Frawley was staying; and (8) The number of people coming from Chicago was unknown to the DEA agents. All of these factors indicated that probable cause existed for the warrantless arrest of Frawley.

■ Since we find that probable cause existed to arrest Frawley, we must now turn to the existence of exigent circumstances in order to determine if the arrest of Frawley was violative of his fourth amendment rights. Exigent circumstances must exist for the warrantless arrest of a suspect. *See United States v. Roper*, 681 F.2d 1354 (11th Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). "An exigent situation

**370**

may arise when there is a danger that the evidence will be destroyed or removed." *United States v. Burgos,* 720 F.2d 1520, 1526 (11th Cir.1983). This court has held that the need to invoke the exigent circumstances exception to the warrant requirement is "particularly compelling in narcotics cases" because narcotics can be so easily and quickly destroyed. *United States v. Young,* 909 F.2d 442, 446 (11th Cir.1990).

Frawley contends that his arrest in the motel room was violative of his fourth amendment rights because he had a reasonable expectation of privacy in his room. "A mere recitation of the difference between the places in which an arrest occurred does not, of course, pronounce relevant Fourth Amendment distinctions." *United States v. Bulman,* 667 F.2d 1374, 1383 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). This court has held, consistent with teaching from the Supreme Court, that a person does not forfeit fourth amendment protections merely because he is residing in a motel room. *United States v. Newbern,* 731 F.2d 744, 748 (11th Cir.1984). Thus, a motel room, however temporary, is equivalent to one's home. *Bulman,* 667 F.2d at 1384. The warrantless search of a home is "presumptively unreasonable," *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), but is allowed where both probable cause and exigent circumstances exist. *Burgos,* 720 F.2d at 1525.[2] Since law enforcement officers may enter a home to make a warrantless arrest if exigent circumstances exist, then they may enter a motel room under the same conditions.

■ In *Satterfield,* 743 F.2d 827, this court set forth the conditions under which exigent circumstances would be found to exist. These conditions include hot pursuit of a suspect, danger to an arresting officer or to the public, and the risk of removal or destruction of evidence. *Id.* at 843–44. These circumstances must be such that they present a real danger to the police or

the public or a real danger that evidence or a suspect may be lost. *Bulman,* 667 F.2d at 1384. In the present case, the record indicated that Frawley was part of a drug conspiracy that involved a half ton of marijuana. Frawley appeared to be responsible for the enormous amount of cash which was going to be used to purchase the marijuana. Frawley was from Chicago and his car had just been seized. A confederate with whom Frawley had discussions was arrested in the parking lot of the motel where Frawley was staying. While they were arresting Forker, DEA agents observed Frawley peering out of his motel window. It is highly probable that Frawley saw the arrest of Forker and saw all of the agents around his Cadillac. It is reasonably prudent to assume that not only would Frawley be planning his flight from the scene, but also, that he would conceal any incriminating evidence in his possession, and pose a danger to law enforcement agents in particular and the public in general.

■ We find that the circumstances are exigent where a suspect is implicated in a drug conspiracy, is thought to be armed, discovers that his confederate is arrested, and discovers that he has been cornered by the police and faces imminent arrest. In that setting, a delay in arresting the suspect creates risk to the police, to other persons in the motel where the suspect is staying, and to innocent passers-by. The police should be entitled to act without delay in order to defuse an inherently volatile situation before the danger materializes in the form of injury to persons or loss of evidence. To require the agents to wait to arrest Frawley until they could obtain a warrant would be unreasonable because valuable evidence could have been destroyed or removed.

Since the facts of this case satisfied the requirements of probable cause and exigent circumstances in a warrantless arrest situation, the evidence of the key found in

2. "It is now clear that warrantless arrests in a suspect's home may be effected only under exi-

gent circumstances." *Roper,* 681 F.2d at 1357.

Frawley's room should not have been suppressed.

In conclusion, we REVERSE the district court's grant of Forker and Frawley's motion to suppress the evidence of the cash found in the vehicle and Frawley's motion to suppress the evidence of the key found on his person.

REVERSED and REMANDED.

HATCHETT, Circuit Judge, concurring specially:

I concur specially in the majority's opinion. Although I agree with the disposition in the case, I do not join in the language which states, "[t]he ability of the vehicle to become mobile is sufficient to satisfy the exigency requirement." This statement is contrary to existing Supreme Court and Eleventh Circuit precedent.

Inherent mobility served as the original basis for an automobile exception to the warrant requirement. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Supreme Court continues to recognize mobility as the basis for this exception. *See California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Mobility does not equal exigency, but is the rationale for the vehicle exception. In other words, law enforcement officers may not search a vehicle simply because it is mobile.

Also, I agree that probable cause and exigent circumstances existed to support the warrantless search of Frawley's hotel room. But, I doubt whether exigent circumstances exist for the search of a dwelling because the suspect feels "cornered." We should continue the case-by-case approach in resolution of search issues, rather than seek to set forth broad rules. Likewise, I doubt whether exigent circumstances analysis should focus so heavily on the defendant's state of mind. *See United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984); *United States v. Torres*, 705 F.2d 1287 (11th Cir.1983), *vacated on other grounds*, 720 F.2d 1506 (11th Cir.1983); *United States v. Bulman*, 667 F.2d 1374 (11th Cir.1982).

HILL, Senior Circuit Judge, specially concurring:

Contrary to my Brother Hatchett, I concur specifically approving of the language in the opinion, "the ability of the vehicle to become mobile is sufficient to satisfy the exigency requirement." This panel is bound by controlling precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc); *Brown v. A.J. Gerrard Mfg. Co.*, 695 F.2d 1290, 1293 (11th Cir.) (opinion for the panel by Hatchett, J., recognizing that although the panel believed a former Fifth Circuit panel decision to be incorrectly decided, *Bonner* bound the panel to follow that decision), *on reconsideration*, 715 F.2d 1549 (11th Cir.1983) (en banc). As Judge Dubina observes, *Nixon* holds, "Put differently, the mobility of an automobile is exigency enough." *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir.1990). "[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning." *Id.*

It is important that law enforcement officers have some guidance more than the apprehension that we shall review their actions on a "case-by-case basis." The automobile exception is clearly stated by this panel's opinion and by *Nixon*.