EDMONDSON, Chief Judge:
Anthony H. Lindsey (“Defendant”) appeals his conviction and sentence of 300 months’ imprisonment for (1) being a felon in possession of a firearm, and (2) being a felon in possession of one or more rounds of ammunition, both in violation of 18 U.S.C. § 922(g)(1) and the Armed Career Criminal Act, 18 U.S.C. § 924(e). Defendant claims several violations of his Fourth, Fifth, and Sixth Amendment rights for alleged errors at trial and sentencing. Because no reversible error has been shown, we affirm.

I. BACKGROUND

In February 2004, authorities received a 911 call from a person identifying himself as “Davis” and reporting that four black males were loading guns and putting them in a large white SUV. The SUV was parked behind a Mobil gas station across from a branch of Wachovia Bank. Detective Jason O. Houston (“Houston”) and other members of the West Palm Beach Police Department had been investigating a recent series of armed bank robberies in the area. The robberies involved three to four black males who had entered banks with assault-type weapons and who drove large SUV-type vehicles. The police also had knowledge of two robberies committed by two black males using handguns in the *1289 parking lot .of this very same branch of Wachovia Bank.
Believing that another robbery was imminent, several officers- — including Houston and Sergeant Martin Tierney (“Tierney”) — responded to the 911 call. Tierney, the first officer on the scene, observed a white Ford Excursion (a large SUV) parked behind the gas station. As Tierney pulled into and circled the station, he observed the SUV pull out of its parked location. Tierney then radioed the other officers that the vehicle was on the move. But instead of leaving the gas station, the SUV pulled around to a gas pump, and stopped. Then, four black men, including Defendant, exited the vehicle. Three of the men walked toward the station’s convenience store, and the fourth opened the hood of the vehicle.
Sergeant Tierney then exited his vehicle and drew his shotgun while yelling at the men to get on the ground. Other officers converged on the gas station and secured the scene. Turning his attention to Defendant, who had reached the door of the convenience store, Tierney ordered Defendant to lay down, to which Defendant responded, “What did I do?” After five to eight seconds, Defendant submitted to Ti-erney’s request. Officers then handcuffed each of the four men and placed them in police vehicles. Then, officers observed an armored vehicle pulling up to the bank and guards leaving the bank carrying satchels of money. According to Tierney, employees of the gas station told officers that the SUV had been parked behind the building for two hours.
Police then examined the SUV to ensure that no armed persons were inside. After identifying each of the men and checking their backgrounds, the officers learned that all four were convicted felons. Three of the men, however, had no outstanding warrants and were released at the scene. Police also discovered that Defendant was the registered owner of the vehicle. Because Defendant was on parole for armed bank robbery and because the police suspected the vehicle contained weapons, Detective Houston decided to detain Defendant to determine whether he had violated his parole.[1] After Defendant twice refused his consent for officers to search the SUV, Houston looked through the tinted windows of the SUV and saw a pair of binoculars and a black canvass bag that he “believe[d] was a rifle bag.”
The SUV, which had expired registration tags, was towed to the police station to inventory its contents. Officers then sought a search warrant before searching the vehicle. Detective Houston and another officer prepared a warrant affidavit based on information they received from other officers and from the 911 operator. After a state judge issued the warrant, officers searched the SUV and discovered a .38-caliber revolver with two rounds of ammunition. The officers also retrieved the binoculars and learned that what they thought was a rifle bag was actually an empty portable-chair holder.
Meanwhile, because the police suspected Defendant of being a felon in possession of a firearm, the officers had arrested Defendant'and brought him to the police station for questioning. After hearing his Miranda rights and signing a waiver, Defendant admitted that the SUV and the items found inside the SUV belonged to him. During this unrecorded interview, Defendant specifically admitted that he had purchased the gun found in the SUV, that he knew the gun contained two rounds of *1290 ammunition, and that he had placed the gun in the center console of the vehicle.
Investigators also conducted an investigation of the items found in the vehicle, including the gun. One crime scene technician attempted to collect latent fingerprints from the gun but was only able to obtain certain “ridge detail” prints. Another fingerprint examiner determined that because the prints had less than six comparison points, they were of no value in making an identification. The examiner, therefore, disposed of the fingerprint card.
At trial, James Jackson (“Jackson”), a jailhouse acquaintance of Defendant, testified that Defendant had made several admissions during their conversations at the Palm Beach County Jail. According to Jackson, Defendant boasted that, on the day police arrested him, he had been “easing a Wachovia bank from a gas station” with binoculars. Defendant also said he was surprised the police had not found his fingerprints on his gun. In addition, Defendant told Jackson that another friend “was supposed to be in on their deal” but was likely the one who had placed the 911 call.

II. DISCUSSION

A Reasonable Suspicion of Criminal Behavior

Defendant argues that the district court erred in denying his suppression motions for evidence discovered in the SUV because the police engaged in an unlawful search and seizure. He specifically maintains that the police lacked reasonable suspicion of illegal activity before stopping and detaining Defendant and failed to make reasonable inquiries to determine whether criminal activity was afoot. For background, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Defendant also argues that, under Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the police failed to verify information from an “anonymous” tip before acting on the information. We review a district court’s denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed de novo and findings of fact reviewed for clear error, in the light most favorable to the prevailing party in district court. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir.2003).
To have reasonable suspicion, an officer conducting a stop must “have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity.” United States v. Powell, 222 F.3d 913, 917 (11th Cir.2000) “The ‘reasonable suspicion’ must be more than ‘an inchoate and unparticularized suspicion or hunch.’ ” Id. (quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). “While ‘reasonable suspicion’ is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.” Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 675-76, 145 L.Ed.2d 570 (2000). Also, “[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity,” United States v. Gordon, 231 F.3d 750, 754 (11th Cir.2000), even if such activity is “seemingly innocuous to the ordinary citizen.” United States v. Smith, 201 F.3d 1317, 1323 (11th Cir.2000).
We examine “the totality of the circumstances” to determine whether the police had “a particularized and objective basis for suspecting legal wrongdoing.” United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citation and internal quotation marks omitted). We also recognize that the po *1291 lice may “draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.” Id. at 750-51 (citation and internal quotation marks omitted). To have reasonable suspicion based on an anonymous tip, the tip must “be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.” J.L., 120 S.Ct. at 1379. “The issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.” Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990).
The totality of the circumstances in this case demonstrates that the police had more than an “inchoate and unpartieular-ized suspicion” based on an “anonymous” tip.[2] The tip was consistent with specific facts already discovered during the ongoing investigation into several bank robberies in the area involving three to four black males driving large SUVs. The police also knew of two armed robberies of patrons committed by two black males outside the very branch of Wachovia Bank that was across from the location of Defendant’s SUV. This independent knowledge corroborated the 911 caller’s assertion that the men in the SUV were loading guns into the vehicle across from the bank. In addition, when Officer Tierney’s vehicle came into view at the gas station, the SUV’s sudden movement from its parked location over to a gas pump gave rise to further suspicion. Thus, rather than reacting to a mere “hunch,” the officers engaged in “a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference,” as dictated by a potentially dangerous situation.[3] United States v. Gil, 204 F.3d 1347, 1351 (11th Cir.2000) (quoting United States v. Hardy, 855 F.2d 753, 759 (11th Cir.1988)).

B. Probable Cause for Defendant’s Arrest

Defendant next argues that the officers arrested him without probable cause and that the district court, therefore, should have suppressed his post-arrest statements. We disagree. Although probable cause involves a greater certainty of criminal behavior than reasonable suspicion, probable cause does not require the same “standard of conclusiveness and probability as the facts necessary to support a conviction.” United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir.2003) (quoting Wood v. Kesler, 323 F.3d 872, 873 (11th Cir.2003)). Probable cause to arrest exists when the totality of the facts and circumstances support “a reasonable belief that the suspect had committed or was committing a crime.” Gordon, 231 F.3d at 758 (citation omitted).
*1292 In addition to the circumstances that gave rise to a reasonable suspicion of illegal behavior to support the initial stop, several facts establish that the police had probable cause to arrest Defendant for being a felon in possession of a firearm.[4] The 911 call provided specific information that the men were loading weapons and placing them into the SUV, which was parked across from the Wacho-via Bank. After the police had detained the four men, the officers observed an armored car pulling up to the bank and guards loading money into the armored car. The police also discovered that all four men were convicted felons and that the registered owner of the vehicle, Defendant, had a past conviction for armed bank robbery. Peering through the tinted windows of the SUV, officers saw binoculars and what they “believefd] was a rifle bag.”[5] Viewing these events in the light of the ongoing investigation into several armed bank robberies in the area and two specific armed robberies in the parking lot of the same branch of Wachovia Bank, the totality of the circumstances supports the conclusion that the police had probable cause to arrest Defendant. Thus, the post-arrest statements made by Defendant after receiving his Miranda warnings were admissible.

C. Validity of the Search Warrant

Defendant also contends that the police illegally obtained a warrant to search his SUV because the warrant was not supported by probable cause and because the search warrant affidavit contained several material misstatements that were made knowingly and intentionally or with a reckless disregard for the truth. Defendant argues, therefore, that the district court should have suppressed the evidence retrieved from his vehicle.
*1293 We do not reach the issue of whether the search warrant in this case was valid. We conclude that a warrant was unnecessary to search Defendant’s vehicle under the automobile exception to the warrant requirement. The automobile exception allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search. United States v. Watts, 329 F.3d 1282, 1286 (11th Cir.2003). The requirement of mobility is satisfied merely if “the automobile is operational.” Id.[6] In addition, “[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure” or that other “exigent circumstances” exist. United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985).[7] The key issue here is whether the police had probable cause for the search and seizure of the vehicle. “Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle.” United States v. Tamari, 454 F.3d 1259, 1264 (11th Cir.2006) (citation and internal quotation marks omitted).
The police had probable cause to search the vehicle: they knew Defendant was a felon and that he owned the SUV; and, given the events at the gas station, a fair probability existed that the vehicle contained a firearm based on the totality of the circumstances. Because the requirements of the automobile exception are met, the police could have searched Defendant’s vehicle lawfully without a warrant. Therefore, the validity of the search warrant is not important; and the evidence obtained from the SUV was properly admitted.

D. Destruction of Fingerprint Card and Brady Error

Defendant next alleges that destruction of the fingerprint card with incomplete prints constitutes reversible error under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[8] When a defendant does not raise a Brady objection in his motion for a new trial, we need only conduct a plain error review. United States v. Kersey, 130 F.3d 1463, 1465 (11th Cir.1997). To make a valid claim that the government improperly withheld or destroyed possibly exculpatory evidence under Brady, a defendant also must demonstrate that the government acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 336-37, 102 L.Ed.2d 281 (1988).
Defendant’s claim that the fingerprint card could have been exculpatory is both highly speculative and insufficient to rise to the level of Brady error. Defendant admitted that he owned the gun and *1294 that he placed it inside the SUV. Furthermore, Defendant has produced no evidence that the fingerprint examiner acted in bad faith in destroying the fingerprint card. The district court did not plainly err by relying on the government’s evidence that this act was pursuant to a routine procedure of throwing out fingerprint cards containing no valuable information to make an identification. Thus, Defendant has shown no Brady error.

E. Evidence of Uncharged Criminal Activity

At trial, the prosecution introduced evidence that Defendant was planning a bank robbery, including the testimony of a jailhouse acquaintance that Defendant had admitted the plan. Defendant now claims that this evidence was improperly introduced as evidence of bad character. We review a district court’s decision to admit evidence under Fed.R.Evid. 404(b) for a clear abuse of discretion. United States v. Paradies, 98 F.3d 1266, 1291 (11th Cir.1996).
In this case, the district court did not abuse its discretion in admitting evidence of Defendant’s plan to commit an armed robbery in or around the bank. This evidence was admissible to establish that Defendant knowingly possessed the weapon and ammunition and that he had a motive for doing so. Also, evidence of a plan to rob a bank was inextricably intertwined with possession of the firearm and was necessary to complete the story of the crime. Admission of this evidence for these purposes is valid under Fed.R.Evid. 404(b).

F. Sentencing Errors

Defendant claims that the district court improperly sentenced him as an armed career criminal because his prior convictions and alleged conspiracy to commit bank robbery were neither charged in the indictment nor proved to a jury beyond a reasonable doubt.[9] Defendant also argues that a sentence of 300 months’ imprisonment was unreasonable under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We review a district court’s application of the Sentencing Guidelines de novo and factual findings for clear error. United States v. Wilks, 464 F.3d 1240, 1242 (11th Cir.2006).
Defendant’s claims of error during sentencing must fail. Nothing in Booker disturbed the Supreme Court’s holding in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that a district court may rely on prior convictions to enhance a defendant’s sentence even if not alleged in the indictment or proved to a jury. United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir.2005). Furthermore, in calculating the appropriate advisory guideline range, Booker does not forbid a district court from considering criminal acts for which a defendant has not been charged or has been acquitted as long as those acts are proved by a preponderance of the evidence. United States v. Faust, 456 F.3d 1342, 1347 (2006). In this case, the district court complied with Booker by treating the sentencing guidelines as advisory and examining the section 3553(a) factors to determine a proper sentence. We conclude, therefore, that the district court did not *1295 abuse its discretion in considering Defendant’s prior convictions and an alleged conspiracy to commit bank robbery. We also conclude that Defendant’s sentence of 300 months’ imprisonment was reasonable.
AFFIRMED.

. Two conditions of Defendant’s parole were (1) that he not possess a firearm and (2) that he not associate knowingly with convicted felons.

. The 911 caller identified himself as "Davis” and informed police that he would be at the scene when police arrived. Officers never spoke with or found any caller at the scene.

. Extra facts in this case cause it to differ significantly from the bare-boned-tip situation in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Court in J.L. concluded that "an anonymous tip that a person is carrying a gun is, without more, [in]sufficient to justify a police officer's stop and frisk of that person.” Id. at 1377 (emphasis added). In this case, the total circumstances, including the 911 caller’s tip combined with a location close-by a bank and combined with the fact of an ongoing independent police investigation of recent unsolved armed robberies of banks — robberies which involved persons of the same sex, race, and number described by the tip and a vehicle of the same general kind as described by the tip — provided "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.” Id. at 1378 (quoting White, 110 S.Ct. at 2414).

. Defendant challenges the magistrate judge's determination that the police had probable cause to arrest Defendant for loitering under Florida law. He claims that if the police truly had probable cause to arrest him for loitering or another crime such as conspiracy to commit bank robbery, the police would not have released the other men that were in the SUV. How the other men were treated, however, is not determinative of whether Defendant was treated lawfully. And even if the police lacked probable cause to arrest Defendant for these other crimes, the police had probable cause to arrest Defendant for being a felon in possession of a firearm at the point they discovered Defendant was a felon and reasonably believed that Defendant's vehicle contained a firearm.

. After police had confronted Defendant with this evidence, he twice refused his consent to search his vehicle. Defendant claims that the police considered his refusal to consent in violation of his Fourth Amendment rights. We recognize "that a refusal to cooperate [with police], without more, does not furnish the minimal level of objective justification needed for a seizure.” Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991) (emphasis added). That the arresting officers subjectively considered Defendant’s refusal to consent, however, is not determinative of a court’s legal conclusion of whether probable cause existed to justify the arrest. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.” Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). We have “explicitly rejected the idea that the subjective belief of the arresting officer is relevant to the determination of whether probable cause exists.” Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir.1998). "Instead, an arrest will be upheld if the objective circumstances justify the arrest.” United States v. Jones, 377 F.3d 1313, 1314 (11th Cir.2004). Based on the totality of the facts and circumstances in this case — apart from the Defendant’s failure to consent to a search — we conclude that probable cause existed to justify Defendant's arrest. Although we do not consider the refusal to consent, we do not decide today whether the fact of and manner of a refusal to consent to a search can ever count in the "totality of the circumstances” analysis that a court must bear in mind when deciding whether probable cause for a seizure does exist.

. Although the original justification for the automobile exception was the exigency of the circumstances, we have "made it clear that the requirement of exigent circumstances is satisfied by the 'ready mobility’ inherent in all automobiles that reasonably appear to be capable of functioning.” Watts, 329 F.3d at 1286 (quotation marks and citation omitted).

. In Johns, the Supreme Court applied the automobile exception to evidence found in two pick-up trucks that were searched three days after DEA officers arrested the occupants and impounded the trucks. Johns, 105 S.Ct. at 884-86. The Court stated that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized. A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify a warrantless search.” Id. at 885 (internal citation and quotation marks omitted).

. Defendant claims that the fingerprint card may have provided some exculpatory evidence for the jury to conclude that someone other than Defendant placed the gun in the vehicle.

. Defendant also contends that classifying his prior convictions as either a violent felony or a serious drug offense must be alleged in the indictment and proved to a jury. But, the nature and fact of a prior conviction are for the district court's determination. United States v. Greer, 440 F.3d 1267, 1274-76 (11th Cir.2006). Because Defendant never objected to the fact of his prior convictions or their classification as violent felonies in the PSI, he is deemed to have admitted these findings. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir.2005).