[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 08, 2003
THOMAS K. KAHN
CLERK

No. 02-16835
Non-Argument Calendar

D.C. Docket No. 02-00095-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

STEVEN WATTS,

Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Florida

**(May 8, 2003)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

After the district court granted Defendant Steven Watts' motion to suppress the drugs found in his automobile,[1] the government brought this interlocutory appeal challenging the district court's ruling. After review, we vacate the district court's order granting Watts' motion to suppress and remand this case for further proceedings.

## I. BACKGROUND

As part of an investigation into Defendant Watts' drug trafficking activities, DEA agents intercepted telephone conversations between Watts and others, in which Watts discussed selling drugs. Furthermore, agents observed Watts conduct several drug deals that were consistent with the intercepted telephone conversations.

The day prior to Watts' arrest, law enforcement authorities intercepted several telephone calls, during which Watts discussed purchasing cocaine, and indicated that he would be traveling to Pensacola, Florida, in a Ford Mustang. On the day of the instant arrest, officers in Loxley, Alabama, conducted a traffic stop of Watts' vehicle. The officers conducted a cursory search of the vehicle, but

---

[1]Watts was charged with conspiring with others to distribute, and possession with intent to distribute, in excess of five kilograms of cocaine and in excess of fifty grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) - (iii).

found nothing of evidentiary value. The officers issued Watts a ticket for failing to stop at a stop sign and permitted him to leave the scene of the traffic stop.

DEA agents then placed Watts under surveillance and followed him to 8154 Stonebrook Drive, a townhouse. Agents subsequently obtained a search warrant for the residence, but not the automobile.

DEA agents executed the warrant at 4:00 a.m. the following morning. Although no contraband was found in the townhouse where Watts was staying, a drug dog gave a positive response to Watts' Mustang. Based on the positive drug alert, authorities searched Watts' car. No drugs, however, were discovered.

Agents remained in the townhouse searching for the cocaine authorities believed Watts had transported in the Mustang. Authorities, however, were unable to locate any contraband.

At approximately 6:00 a.m., another drug dog was deployed around the exterior and interior of the Mustang. The second drug dog gave a positive response at the center console area of the car. Authorities removed the center console, took it apart, and discovered a quarter kilogram of cocaine.

In granting Watts' motion to suppress, the district court concluded that the car was not parked within the curtilage of the townhouse, and, thus, could not be searched based on the warrant authorizing a search of the townhouse where Watts

was staying.[2] The district court then considered the search under the automobile exception to the warrant requirement. The district court determined that although probable cause existed to search the Mustang, that under Coolidge v. New Hampshire, 403 U.S. 443 (1971), there were insufficient exigent circumstances to justify a warrantless search.

Specifically, the district court concluded that, under the facts of the instant case, there were no exigent circumstances necessitating the search because agents had ample opportunity to obtain a search warrant for the Mustang. The court based its conclusion on the fact that there was no evidence that others would have moved the Mustang before authorities could have returned with a warrant.

## II. DISCUSSION

On appeal, the government asserts that with regard to the search of an automobile, exigency is created by the inherent mobility of an automobile. The government further argues that the inherent mobility of Watts' Mustang and the fact that law enforcement had probable cause to search Watts' Mustang are sufficient to justify a warrantless search in this case.[3]

### A.    Fourth Amendment

---

[2]The government does not appeal this issue.

[3]The grant of a motion to suppress presents a mixed question of law and fact. United States v. Reid, 69 F.3d 1109, 1113 (11th Cir. 1995).

The Fourth Amendment provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. While it is true that the Fourth Amendment generally requires law enforcement officials to obtain a warrant before conducting a search, there is what has become known as the automobile exception to the warrant requirement.

## B.    The Automobile Exception

The automobile exception to the warrant requirement was based initially on a car's ready mobility and the exigent circumstances created by that mobility. See Carroll v. United States, 267 U.S. 132, 153 (1925). In Carroll, the Supreme Court recognized that the automobile presented unique issues to law enforcement because officers might not have the opportunity to obtain a warrant without losing sight of the car and because the car might escape if not stopped immediately. Id.

Indeed, language in early Supreme Court cases appeared to require such an exigency in addition to probable cause for a warrantless search of automobile. See Coolidge, 403 U.S. at 478 (noting that, even where there is probable cause to search an automobile, if "police knew of the presence of the automobile and planned all along to seize it" when they arrested defendant in his home, then "there was no 'exigent circumstance' to justify their failure to obtain a warrant"

5

and fruits of search must be suppressed); <u>Chambers v. Maroney</u>, 399 U.S. 42, 50-52 (1970) (holding that, based on automobile's ready mobility and "fleeting" opportunity to search, where officers have probable cause to search a car when it is initially stopped on the road it may also be searched without a warrant after it has been taken to the police station).

In <u>California v. Carney</u>, 471 U.S. 386, 391-92 (1985), however, the Supreme Court articulated an additional justification for warrantless car searches, namely that a car's occupants enjoy a reduced expectation of privacy in their car compared to their home due to the extensive regulation of automobiles. Since <u>Carney</u> the necessity of a special exigency has waned and is now satisfied by the mobility of the car itself.

**C.     The Test: Mobility of the Automobile and Probable Cause**

In <u>United States v. Ross</u>, 456 U.S. 798, 809 (1982), the Supreme Court stated that if there was probable cause to search a vehicle, a warrantless search would not be deemed in contravention of the Fourth Amendment if the facts of the case would have justified a warrant, "even though a warrant has not actually been obtained." In <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940 (1996) (per curiam), the Supreme Court repeated this rule and stated: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . .

permits police to search the vehicle without more." Finally, in <u>Maryland v. Dyson</u>, 527 U.S. 465, 467 (1999) (per curiam), the Supreme Court made it clear again that no special exigency is required beyond a showing of the mobility of the automobile.

In <u>Maryland</u>, local law enforcement received a tip from a reliable confidential informant that the defendant had gone to New York to buy drugs, and would be returning to Maryland in a rented red Toyota later that day with a large quantity of cocaine. <u>Id.</u> at 465. A deputy sheriff investigated the tip and found that the license number given to him by the informant belonged to a red Toyota Corolla that had been rented to the defendant, who was a known drug dealer. <u>Id.</u> at 465-66. When the defendant returned in the rented car at 1 a.m., local law enforcement stopped and searched the vehicle, finding 23 grams of crack cocaine in a duffel bag in the trunk. <u>Id.</u> at 466.

Although the trial court denied the defendant's motion to suppress, the Maryland Court of Special Appeals stated that in order for the automobile exception to the warrant requirement to apply, there must not only be probable cause to believe that evidence of a crime is contained in the automobile, but also a separate finding of exigency precluding the police from obtaining a warrant. <u>Id.</u> Applying this rule to the facts of the case, the Maryland Court of Special Appeals

concluded that although there was "abundant probable cause," the search violated the Fourth Amendment because there was no exigency that prevented or even made it significantly difficult for the police to obtain a search warrant. Id.

In Maryland, the United States Supreme Court seemed to express some frustration in having to repeat the automobile exception for the third time, stating "[a]s we recognized nearly 75 years ago . . . there is an exception to [the warrant] requirement for searches of vehicles. And under our established precedent, the 'automobile exception' has no separate exigency requirement." Id. The Supreme Court went on to state that it "made this clear in [Ross], when we said that in cases where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*.' In [Labron], we repeated that the automobile exception does not have a separate exigency requirement." Id. at 467 (emphasis in original). The Supreme Court went on to conclude that in light of the fact that the defendant was driving his automobile at the time of his arrest, a finding of probable cause "alone satisfies the automobile exception to the Fourth Amendment's warrant requirement." Id.

This Court also has recognized the limited showing necessary to justify a warrantless search in United States v. Nixon, 918 F.2d 895, 903 (11th Cir. 1990).

8

In <u>Nixon</u>, law enforcement had obtained wiretap information indicating that one of the defendants would be driving from Ft. Lauderdale to Jacksonville the next week in a rented car with a package containing cocaine. <u>Id.</u> at 902. On the day of the scheduled trip, another intercepted phone call identified the estimated times that the defendant would be leaving Ft. Lauderdale and arriving in Jacksonville. <u>Id.</u> When the defendant was seen in a rented car traveling 81 m.p.h. on the route authorities thought he would be taking, he was stopped and a search of the trunk led to the seizure of two kilograms of powder cocaine. <u>Id.</u>

In <u>Nixon</u>, 918 F.2d at 903, this Court specifically rejected the defendant's contention that "law enforcement agents can justify a warrantless search of an automobile only through some showing of exigent circumstances *beyond* the exigency inherent in the ready mobility of the vehicle." (Emphasis in original). Rather, this Court made it "clear that the requirement of exigent circumstances is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning." <u>Id.</u> (Emphasis in original).

It is clear from the above caselaw that there are only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of an automobile. The first is whether the automobile is readily mobile. All that is

necessary to satisfy this element is that the automobile is operational. Nixon, 918 F.2d at 903. In this case, there is no dispute that Watts' Mustang was operational.

The second prong of the test, probable cause, is determined under the facts of each case. In this case, there is no dispute that the drug dogs' multiple positive responses constituted probable cause. See United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993).

Because both elements of the automobile exception were satisfied, law enforcement was authorized to conduct a warrantless search of Watts' car. Consequently, the district court erred in granting Watts' motion to suppress.

### III. CONCLUSION

For all the above reasons, we vacate the district court's December 10, 2002, order granting Watts' motion to suppress and remand this case back to the district court for further proceedings.

**VACATED and REMANDED**