[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 8, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11701

_____

D. C. Docket No. 04-00068-CV-CAR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

$175,722.77, in United States Currency, more or
less, 2002 Nissan Quest, VIN:4N2ZN15T52D807012,

Defendants,

JOHN ROBERT PATINO,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(May 8, 2007)**

Before TJOFLAT, BLACK and EBEL,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

John Patino, through counsel, appeals the district court's judgment in an *in rem* forfeiture proceeding regarding a van and cash seized after a traffic stop by state police officers in Houston County, Georgia. He raises four issues on appeal, which we address in turn.

## I. DISCUSSION

Patino first argues on appeal that the district court should have suppressed currency seized from the van because his continued detention and a dog sniff of the van he was driving were not supported by probable cause as required by the Fourth Amendment. Patino alleges that the dog sniff was an unlawful search and seizure because Patino did not receive a traffic citation. Further, he claims there was no basis for the initial dog sniff so the dog's alert was insufficient to establish probable cause.

### A. *Motion to Suppress*

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. *Id.* "[A]ll facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). The district court's application of the law to the facts is reviewed *de*

*novo*.  *Id*.  The Fourth Amendment exclusionary rule applies to civil forfeiture

cases.  *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S. Ct.

1246, 125 (1965).

1.  *The Initial Traffic Stop*

The Fourth Amendment protects individuals from "unreasonable searches

and seizures" by the Government, and its protections extend to "brief investigatory

stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.

Ct. 744, 750 (2002).  A decision to stop a vehicle is reasonable under the Fourth

Amendment where an officer has probable cause to believe that a traffic violation

occurred.  *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999).  A driver

must maintain a lane of traffic in Georgia.  O.C.G.A. § 40-6-48.  The initial traffic

stop of the van was reasonable and does not implicate the Fourth Amendment

because Corporal Chad Payne had probable cause to believe that Patino violated

Georgia traffic law by crossing the dividing line twice.

2.  *Delay During Traffic Stop and Subsequent Investigation*

A traffic stop must be of limited duration and may not last "any longer than

necessary to process the traffic violation unless there is articulable suspicion of

other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.

2001).  The duration of the traffic stop "must be limited to the time necessary to

3

effectuate the purpose of the stop." *Id*. However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991). A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837 (2005). Additionally, police are "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." *Simmons*, 172 F.3d at 778. The Supreme Court has found that there was no Fourth Amendment violation where one officer conducted a dog sniff of a defendant's car while the officer executing the traffic stop wrote the defendant a warning. *Caballes*, 543 U.S. at 408-09, 125 S. Ct. at 837-38.

The district court did not err in concluding that the length of the initial traffic stop was reasonable. Seven minutes is a reasonable amount of time to effectuate a traffic stop, and Payne was entitled to conduct a series of checks on Patino and his license. Further, the dog sniff did not unreasonably delay the traffic

4

stop, nor was it an unreasonable search under the Fourth Amendment because the dog sniff occurred simultaneously with Payne's check of Patino's license.

3. *The Subsequent Search*

If a car is operational and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without a warrant. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996); *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990). Probable cause exists to search a car without a warrant where a drug dog has alerted to drugs in the car. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). The probable cause established by the drug dog's positive alert is sufficient to permit a search of an automobile without a warrant. Therefore, the search of the van was lawful, and the district court did not err in denying Patino's motion to suppress.

B. *Motion to Exclude Evidence*

Patino also argues that the district court should have excluded any evidence relating to the seizure of the cash because the Government spoiled the cash by placing it in a bank account, where it was commingled with other funds.

We review the district court's admission of evidence for an abuse of discretion. *United States v. Trujillo*, 146 F.3d 838, 843 (11th Cir. 1998). The Due Process Clause of the Fifth Amendment requires the Government to disclose to

5

criminal defendants favorable evidence that is material either to guilt or to punishment. *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984) (citations omitted). "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police' " *United States v. Revolorio-Ramo*, 468 F.3d 771, 775 (11th Cir. 2006) (citation and quotation omitted) (determining that Coast Guard's destruction of a drug-smuggling vessel did not violate due process because there was no bad faith on the part of the authorities and defendant had the opportunity to cross-examine officers who observed the boat about its contents).

The district court did not abuse its discretion by allowing evidence relating to the cash to be admitted at trial. Patino can show no due process violation because he does not allege that the Houston County Sheriff's department acted in bad faith by depositing the cash into the account. Contrary to Patino's arguments, the Government never alleged that the cash was contaminated by drugs and did not rely on evidence of drug residue on the cash to carry its burden at trial. Patino fails to point to any evidence in the record showing that the district court abused its discretion by denying his motion to exclude evidence relating to the currency.

6

C. *Sufficiency of the Evidence*

Patino argues that the district court clearly erred in finding by a preponderance of the evidence that the cash was substantially connected to an illegal drug transaction.

We review the district court's findings of fact for clear error, and conclusions of law *de novo*. *United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001). To be entitled to civil forfeiture, the Government must establish by a preponderance of evidence "a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(1) and (3). A claimant has the burden of proving that they are an innocent owner of the property by a preponderance of the evidence. 18 U.S.C. § 983(d)(1). An innocent owner does not know of the conduct giving rise to forfeiture. 18 U.S.C. § 983(d)(2)(A)(i).

The district court did not err in finding the Government had proven by a preponderance of the evidence that the cash and the van were substantially connected to the distribution of drugs. The Government presented evidence that the car had an overwhelming odor of air fresheners, and that drug couriers often used air fresheners to mask the smell of drugs. The van was also borrowed from a third party, a practice consistent with drug trafficking. Significantly, a drug dog alerted to the smell of drugs in the van, and traces of cocaine were found on a floor

7

mat. The van contained an extremely large amount of cash hidden and packaged in a manner consistent with drug and currency trafficking. Patino and the other occupant had also traveled 150 miles north of Indianapolis, and were ticketed during a traffic stop outside Gary, Indiana. This traffic stop was not far from Chicago, Illinois, a known drug distribution hub in the Midwest. Finally, Soler, the other occupant of the van, had been stopped in Tennessee in 2001, driving a similar van and carrying another large amount of cash. This evidence is sufficient to find by a preponderance of the evidence that the cash was substantially connected to drug distribution.

Although Patino argues that he was an innocent owner of the cash, his argument is meritless. Patino's deposition and trial testimony were inconsistent and do not establish that he was the innocent owner of the cash by a preponderance of the evidence. Patino testified at his deposition that his September 28, 2003, trip to Indianapolis was his first, and that he bought tickets the day before the race. Patino later testified that he had been to Indianapolis several times and that he had bought tickets during an earlier trip on September 9, 2003. Patino denied that the money was his at the traffic stop, but later claimed that he had won the money. Patino also failed to show how he raised the $9,000 gambling buy-in given his

8

poor economic situation.  Patino's evidence, thus, is insufficient to establish he was

an innocent owner of the currency by a preponderance of the evidence.

D. *Federal Adoption of a State Seizure*

Patino argues that the Government did not have standing to initiate the

forfeiture proceeding because Georgia did not lawfully seize the currency.

We review the district court's findings of fact for clear error, and its

conclusions of law *de novo*.  *United States v. Carrell*, 252 F.3d 1193, 1198 (11th

Cir. 2001).

Seizures must be made using a warrant unless:

> A) a complaint for forfeiture has been filed in the United
> States district court and the court issued an arrest warrant
> *in rem* pursuant to the Supplemental Rules for Certain
> Admiralty and Maritime Claims
> (B) there is probable cause to believe that the property is
> subject to forfeiture and--
>> (i) the seizure is made pursuant to a lawful arrest
>> or search; or
>> (ii) another exception to the Fourth Amendment
>> warrant requirement would apply; or
> (C) the property was lawfully seized by a State or local
> law enforcement agency and transferred to a Federal
> agency.

18 U.S.C. § 981 (b)(2)(A)-(C).  Patino argues that "lawfully seized by a State or

local law enforcement agency," in subsection (C), means the seizure must be

lawful under state law.  Without deciding the meaning of subsection (C), we

9

conclude this seizure was lawful under both the Constitution and Georgia law, rendering Patino's claim meritless.

Under Georgia law, property is not subject to forfeiture for a violation involving only one gram or less of a mixture containing ccocaine or four ounces or less of marijuana unless said property was used to facilitate a transaction in or a purchase of or sale of a controlled substance or marijuana. O.C.G.A. § 16-13-49(e)(2).

The Government lawfully seized the currency under 18 U.S.C. § 981 (b)(2)(A)-(C). As discussed above, the search and seizure of the van's contents were lawful under the Fourth Amendment. In addition, the seizure was lawful under Georgia law. The district court properly found the currency was substantially connected to drug distribution. This finding also satisfies Georgia's requirement that property must be used to facilitate a transaction in controlled substances in order to be forfeitable. O.C.G.A. § 49(e)(2). Thus, even under Patino's interpretation of the seizuse statute, the district court did not err in determining that the federal government properly seized the property after a lawful state seizure under 18 U.S.C. § 981(b)(2)(C).

## II. CONCLUSION

The district court did not err in denying Patino's motion to suppress and did not abuse its discretion in denying his motion to exclude evidence. Additionally, there was sufficient evidence that the cash was connected to an illegal drug transaction, and the Government properly seized the property after a lawful state seizure. Accordingly, we affirm.

**AFFIRMED.**