[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13751
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:08-cv-00035-WCO

GEOFFREY ASHER,

Plaintiff - Appellee,

versus

MARK MCCLURE,
Sheriff of Lumpkin County, Georgia, in their individual capacities,
SERGEANT CURT DONALDSON,
in their inidividual capacities,
INVESTIGATOR BEN NIX,
DEPUTY STERLING COLE,
of the Lumpkin County Sheriff's Department in their individual
capacities,

Defendants - Appellants,

LIEUTENANT RYAN MILLER,
in their individual capacities,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 20, 2011)

Before TJOFLAT, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Defendants McClure, Nix, Cole, and Donaldson (collectively "Defendants"), law enforcement officers employed by the Lumpkin County Sheriff's Office in Georgia, appeal the district court's denial of their motion for summary judgment on qualified immunity grounds of Geoffrey Asher's 42 U.S.C. § 1983 claims.

This action arises out of a confrontation between Asher and Defendant Cole on Asher's property in front of his home. Cole claimed that Asher was speeding and ignoring Cole's attempts to make a traffic stop, and that he thus followed Asher to his home. Asher claims that he was not speeding, and that Defendant Cole did not have his emergency lights or siren activated. In any event, a confrontation ensued. At some point during this confrontation, Defendants McClure, Nix, and Donaldson, as well as several other officers, arrived on the scene, and Asher was arrested. Defendants then searched the truck Asher had

2

been driving, finding numerous guns and ammunition, and then entered and searched Asher's home, as well as a Corvette that was parked in front of Asher's property. After all of these searches, Defendants obtained a search warrant and conducted an additional search of the house.

Asher's § 1983 claim asserts that Defendants' entry and search of his home and vehicles without a warrant, and in the absence of any exigent circumstances, violated his Fourth Amendment rights. The district court denied Defendants' motion for summary judgment based on qualified immunity with reference to their entry and search of Asher's home and the Corvette, holding that disputed issues of material fact remained as to those issues.[1] Defendants appealed.[2]

## DISCUSSION

We review the district court's denial of summary judgment based on qualified immunity de novo, resolving all issues of material fact in favor of the plaintiff. Crenshaw v. Lister, 556 F.3d 1283, 1289 (11th Cir. 2009). "Qualified immunity shields government officials from liability for civil damages for torts

---

[1] The district court granted in part Defendants' motion for summary judgment, finding that they were entitled to qualified immunity as to their search of Asher's pick-up truck following his arrest, and also that Defendant Nix was entitled to qualified immunity as to his application for a search warrant. Asher does not appeal the district court's qualified immunity ruling as to these claims.

[2] Interlocutory appeal is available from the denial of qualified immunity defenses. Mitchell v. Forsyth, 472 U.S. 511 (1985).

3

committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Id. As law enforcement officers, Defendants were acting as government officials, and the parties agree that they were acting within the scope of their discretionary authority. Thus, to determine whether they are protected by qualified immunity, we must consider whether the evidence, taken in the light most favorable to Asher, supports a conclusion that Defendants violated Asher's Fourth Amendment rights and, if so, whether those rights were clearly established at the time of the violation. Id. at 1290.

Defendants claim that, following Asher's arrest, Defendants McClure, Cole, and Donaldson entered Asher's house to conduct a protective sweep, which lasted no more than ten minutes and was constitutional under Maryland v. Buie, 494 U.S. 325 (1990) (permitting quick and limited search of the premises following arrest for safety reasons). Defendants contend that, following the initial protective sweep, they conducted a more thorough search of the residence, but only after another officer on the scene represented to them that Asher had consented to the search. They argue that they are entitled to qualified immunity as to this search because they reasonably believed that consent had been obtained.

In making this argument, Defendants fail to take the facts in the light most favorable to Asher. As to the protective sweep, the district court found that

> [w]hile defendants have presented sworn statements indicating that their protective sweep lasted no more than ten minutes, plaintiff has presented his own sworn statements and testimony, as well as those of neighbors and eyewitnesses, that 'from the point of the government's first entry into plaintiff's home without a warrant or consent, and during the time plaintiff was in handcuffed [sic] in a patrol car, the agents on the scene, including defendants McClure, Donaldson, Cole and Miller were consistently and continuously going in and out of plaintiff's home and vehicles for a period of at least three hours.'

(Dist. Ct. Order at 17-18 (citations and alterations omitted). As to Defendants' argument that they believed Asher had consented to the second search of the house, the district court found that

> Defendants' contention is based upon defendants' version of the facts, which consists of an initial search they characterize as a protective sweep, followed by a completely separate, later search of the home, during which defendants McClure, Nix, Cole, and Donaldson believed plaintiff had given consent. As fully set forth above, these facts are hotly disputed by way of contradictory sworn testimony from the parties and witnesses. Where, as here, the determination of factual issues turns on the credibility of entirely contradictory sworn testimony, the court cannot find that defendants are entitled to qualified immunity.

(Dist. Ct. Order at 20.) The district court further noted that Asher insists he never provided consent for the search, and that Defendants appeared unclear as to which officer told them such consent had been given.

5

On this record, the district court did not err in denying Defendants' motion for summary judgment on qualified immunity grounds as to the search of Asher's residence, as genuine issues of material fact remain as to this issue.

As to the search of the Corvette, Defendants argue that they were permitted to search the vehicle under the "automobile exception" to the Fourth Amendment's warrant requirement, which permits the police to search a vehicle without a warrant if it is "readily mobile and probable cause exists to believe it contains contraband." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). The first requirement, that the car be readily mobile, is satisfied so long as the car "reasonably appear[s] to be capable of functioning." United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003) (quotation marks omitted). It is also well-established that "no special exigency is required beyond a showing of the mobility of the automobile." Id. at 1285.

The district court correctly found that the first element of the automobile exception was satisfied, as nothing in the facts provided a reason to believe that the Corvette was not a functioning automobile capable of mobility. However, we find that disputed questions of material fact remain as to whether Defendants had probable cause to search the Corvette. Prior to the search of Asher's house, Defendants had no way of linking Asher to the vehicle parked outside. Taking the

6

facts in the light most favorable to Asher, none of the Defendants or any other law enforcement officer ran the license plate tags or otherwise attempted to determine who owned the Corvette or to whom it was registered. Nor did they look inside the car and see anything that would give them reason to believe that they would find contraband in the car. It was only after the warrantless entry into the house, at which point Defendants found the keys to the Corvette as well as other numerous firearms, that they decided to search the car. Because disputed issues of material fact remain concerning the constitutionality of the search of both the house and the Corvette on the property, we affirm the district court's denial of summary judgment on qualified immunity grounds.[3]

**AFFIRMED.**

---

[3] Defendants also argue that a search of the Corvette was authorized under the rationale of <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983), which permits the police to search a vehicle if they have a reasonable belief that "the suspect is dangerous and the suspect may gain immediate control of weapons." They argue that because the Corvette was registered to someone other than Asher, they had reason to believe that there might be another person on the premises who could access a weapon in the Corvette and threaten the officers. However, nothing in the record indicates that Defendants knew the car belonged to someone else before they searched it, nor were any facts presented that would give rise to a reasonable belief that there was a dangerous person on the premises.