[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2011
JOHN LEY
CLERK

No. 10-13237
Non-Argument Calendar

_____

D.C. Docket No. 0:09-cr-60245-WPD-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RENE FERNANDEZ GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 6, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Rene Fernandez Garcia appeals his conviction and sentence for being a

felon in possession of a firearm, 18 U.S.C. § 922(g)(1). On appeal, Garcia argues

that the district court erred in denying his motion to suppress evidence seized during a warrantless search of his vehicle. He also contends that the district court clearly erred by denying his request for a minor-role reduction under U.S.S.G. § 3B1.2(b). For the reasons stated below, we affirm.

I.

A grand jury returned an indictment charging Garcia with: (1) conspiracy to obstruct interstate commerce by means of robbery, in violation of 18 U.S.C. § 1951(a); (2) conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846; (3) attempt to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846; (4) conspiracy to use and carry firearms during and in relation to a crime of violence and drug trafficking crime, in violation of 18 U.S.C. § 924(o); (5) using and carrying firearms during and in relation to a crime of violence and drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and (6) being a felon in possession of a firearm, in violation of 18 U.S.C.§§ 922(g)(1) and 2 (Count Six). Amaury Hernandez, Lazaro Riveras, Jose Veitia, Pablo Arrechavaleta, Jorge Herrera, and Garcia's brother, Rafael Fernandez Garcia, also were charged in the superseding indictment.

Garcia moved to suppress evidence seized during a warrantless search of his

2

Hummer H2 vehicle. At the suppression hearing, Special Agent James VanVliet of the Bureau of Alcohol, Tobacco, and Firearms testified that Hernandez and Riveras met with an undercover officer. The officer was posing as a disgruntled drug courier who was seeking to have his employer's stash house robbed. Hernandez and Riveras indicated that their robbery crew would enter the stash house dressed as law enforcement officers and armed with guns.

On September 10, 2009, the date on which the robbery was to occur, Herandez met with the government's confidential informant ("CI") in Miami Lakes. He entered the CI's vehicle, and the two men started driving westbound on the Miramar Pakway. They pulled over on the shoulder of the road to wait for the other conspirators. Eventually, three other vehicles arrived at the scene: a white Chevrolet Impala, a red Hummer H2, and a white Ford F350 pickup truck. A detective conducting surveillance observed Garcia driving the Hummer. All four vehicles proceeded northbound on I-75 to the Sawgrass Expressway and then exited onto Commercial Boulevard.

The CI's vehicle and the Impala pulled into a Mobil gas station where the conspirators were supposed to meet with the CI, while the Hummer and the Ford F350 parked across from the Mobil station in a CVS parking lot. Aerial surveillance showed two men standing outside the Hummer. Eventually, those

3

men got into the Ford F350 and traveled a quarter of a mile down the street to a Sunoco gas station. The CI's vehicle and the Impala followed the undercover detective to a warehouse. Hernandez, the CI, and the undercover detective entered the warehouse, while Riveras, Veitia, and Arrechavaleta remained outside in the Impala. Hernandez called Garcia and told him, "So the Hummer can park over there with those things, you copy me?" The agents interpreted this to be a reference to the firearms and the tools that were to be used in the robbery. Hernandez, Arrechavaleta, Riveras and Veitia were arrested at the warehouse, and Garcia, his brother Rafael Garcia, and Herrera were arrested inside the Ford F350 that was parked at the Sunoco gas station. Agents did not discover any firearms on the defendants' persons or inside the Chevrolet Impala or the Ford F350, but they did find the keys to the Hummer in the Ford F350. The agents then searched the Hummer and discovered a Beretta pistol, a shotgun, and police paraphernalia.

The district court determined that the search of the Hummer was lawful under the automobile exception to the Fourth Amendment's warrant requirement because the agents had probable cause to believe that the weapons for the robbery would be found in that vehicle. Accordingly, the district court denied Garcia's motion to suppress.

At trial, Hernandez testified regarding Garcia's role in the conspiracy. He

4

explained that Rafael Garcia, Arrechavaleta, and Herrera were to enter the stash house first dressed as law enforcement officers. Riveras would then enter the house armed with the shotgun, accompanied by Veitia, who would be carrying the Beretta pistol. Garcia's job was to supply the Beretta pistol and to transport the firearms and various police items to the staging area for the robbery. The other conspirators wanted Garcia to take the weapons to avoid any connection to them in the event that police stopped them. During the robbery Garcia was to wait outside the stash house in the Hummer in case he was needed. Garcia would not receive an equal share of the cocaine because he was not going to actively participate in the robbery. Instead, he would receive some money or cocaine from each of the other conspirators. The jury convicted Garcia with respect to Count Six, the felon in possession charge, but acquitted him of the other charges against him.

At sentencing, Garcia requested a minor-role reduction under U.S.S.G. § 3B1.2(b). He observed that his role in the robbery was limited to transporting some of the firearms and equipment that would be used to commit the crime. He also noted that he was going to be paid less than any of his co-conspirators.

The district court denied Garcia's request for a minor-role reduction. The court observed that Garcia transported the guns to be used in the robbery, used a

walkie-talkie, and also planned to conduct surveillance during the robbery. The district court concluded that these were "instrumental aspects" of the planned drug robbery. The court determined that Garcia had an offense level of 26 and a guideline range of 70 to 87 months' imprisonment. The district court sentenced Garcia to the upper end of that range, 87 months' imprisonment.

## II.

A district court's denial of a motion to suppress presents a mixed question of law and fact. *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). We review the district court's legal rulings *de novo* and its findings of fact for clear error. *Id.* Under the automobile exception, police may conduct a warrantless search of a vehicle if: "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Id.* at 1293. The mobility requirement is satisfied whenever the vehicle to be searched is operational. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). A functioning vehicle is considered to be "mobile" even if it already has been secured by the police. *See Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080-81, 73 L.Ed.2d 750 (1982) (explaining that officers may conduct a warrantless search of an automobile even after the vehicle is impounded and in police custody); *United States v. Birdsong*, 982 F.2d 481, 483 (11th Cir. 1993) (holding that automobile exception applied

6

even though the defendant already had been taken into custody and the police were in possession of his car keys). Police have probable cause to search a vehicle "'when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle.'" *Lindsey*, 482 F.3d at 1293 (quoting *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006)).

In this case, the district court correctly concluded that the Hummer was readily mobile. The Hummer plainly was operational because law enforcement officers observed Garcia driving it shortly before his arrest. Garcia observes that the officers had already arrested him and had taken possession of the keys to the Hummer, but those facts do not show that the vehicle was not operational. The mobility requirement focuses on whether the vehicle is capable of functioning, not whether it is likely to move in the near future. *See Thomas*, 458 U.S. at 261, 102 S.Ct. at 3080-81; *Birdsong*, 982 F.2d at 483.

The agents also had probable cause to search the Hummer. Hernandez told the undercover officer that the robbery crew would enter the stash house dressed as police and armed with guns. On the day planned for the robbery, law enforcement officers observed Garcia following Hernandez's vehicle in the Hummer. Later, Hernandez called Garcia and made a reference to "those things"

7

in the Hummer. When the conspirators were placed under arrest, the agents did not find any weapons on their persons or in the other vehicles associated with the conspiracy. Thus, the officers had probable cause to believe that the weapons for the robbery would be found in the Hummer. *See Lindsey*, 482 F.3d at 1293. We conclude that the district court properly denied Garcia's motion to suppress.

III.

A district court's determination of a defendant's role in the offense is reviewed for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*). The party seeking the adjustment bears the burden of establishing its applicability by a preponderance of the evidence. *Id.* at 939. Under the Sentencing Guidelines, a defendant's offense level is to be reduced by two levels if the defendant was only a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5). In determining whether to award a minor-role adjustment, the district court should consider two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *De Varon*, 175 F.3d at 940.

8

Here, Garcia did not play a minor role in the robbery conspiracy. Although Garcia was not to enter the stash house himself, he supplied the Beretta pistol that was to be used to commit the robbery. He also transported the Beretta and the shotgun to a staging area for the robbery, along with police paraphernalia that his co-conspirators were to wear during the robbery. Given these facts, the district court appropriately concluded that Garcia was involved in "instrumental aspects" of the conspiracy.

Under the second prong of *De Varon*, it appears that Garcia's role in the offense was somewhat less serious than that of his co-conspirators, as he was not to enter the stash house himself and was to be paid less than the other conspirators. Nevertheless, Garcia still played an integral role in the conspiracy because he supplied one firearm and transported the shotgun and other tools that were to be used in the robbery. In light of the evidence presented at trial, the district court did not clearly err by denying Garcia's request for a minor-role reduction. Accordingly, we affirm.

**AFFIRMED.**